Filed 3/26/25  De Guzman v. New Hope Charity CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LIEZL DE GUZMAN,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>NEW HOPE CHARITY ET AL.,<br><br>　　　Defendants and Respondents. | A170487<br><br>(San Mateo County<br>Super. Ct. No. 22-CIV-01552) |

In 2006, appellant Liezl De Guzman took out a home equity line of credit in a maximum amount of $168,750, secured by real property on Arroyo Drive in South San Francisco.  In 2011, De Guzman filed for bankruptcy and stopped making payments on the loan.  Some ten years later, in 2021, Real Time Resolutions, Inc. (RTR) foreclosed on the property, which was later sold at a trustee's sale.

In April 2021, De Guzman and her husband filed a lawsuit that via amended complaints came to include 12 defendants.  In December 2023, three of those defendants—RTR, Mortgage Electronic Registrations, Inc. (MERS), and Shauna Boedeker—obtained summary judgment.  De Guzman appealed, and in an opinion filed on October 3, 2024, we affirmed.  (*De Guzman v. Real Time Resolutions, Inc.* (Oct. 3, 2024, A169700) [nonpub. opn.] (*De Guzman*).)

Meanwhile, in January 2024, two other defendants—New Hope Charity

1

and Julianmore LLC—respectively, the buyer of the property at the foreclosure sale and the entity to which the property was thereafter sold— filed their own motion for summary judgment. The motion was granted, and De Guzman again appealed. We again affirm.

## BACKGROUND[1]

"**The Mortgage, the HELOC, and the Foreclosure**

"De Guzman obtained a real estate license in 2005. In 2006, she and her husband, Randel L. De Guzman, purchased property on Arroyo Drive in South San Francisco as an investment (the property). In order to finance the purchase, on October 16, 2006, De Guzman and her husband obtained a $843,750.00 primary mortgage loan and a home equity line of credit (HELOC) in a maximum amount of $168,750.00 from Countrywide Bank, N.A., secured by the property. In connection with both the mortgage loan and the HELOC, De Guzman and her husband executed deeds of trust (the primary deed of trust and the HELOC deed of trust, respectively) naming MERS as beneficiary 'acting solely as a nominee' for Countrywide Bank, N.A. and its 'successors and assigns.' Both deeds of trust were recorded in San Mateo County on October 20, 2006.

"RTR began servicing the HELOC loan in September of 2009.

"In 2011, De Guzman and her husband filed for bankruptcy and thereafter stopped making payments on the HELOC loan.

"Approximately 10 years later, on June 22, 2021, MERS executed an assignment of the HELOC deed of trust to RTR, which assignment was recorded on July 7, 2021. Shauna Boedeker executed the Assignment as a Vice President of MERS.

---

[1]     Much of the background is taken from our earlier opinion in *De Guzman, supra*, A169700.

2

"On September 28, RTR recorded a notice of default (NOD) with respect to the property, followed by a notice of trustee's sale on January 4, 2022.

"On April 4, the property sold at auction for $315,600 to New Hope Charity, and a trustee's deed upon sale was recorded on June 13. According to the deed, the amount of the unpaid debt at that time was $302,177.21.

"On June 24, a grant deed was recorded through which New Hope Charity transferred the property to Julianmore, LLC. Also on June 24, a deed of trust and assignment of rents was recorded reflecting that Julianmore, LLC obtained a loan from Anchor Loans, LP secured by the property. On July 8, a full reconveyance was recorded reflecting that plaintiffs' primary deed of trust had been reconveyed.

"**The Proceedings Below**

"Meanwhile, in April 2021, De Guzman and her husband, proceeding in propria persona, filed a complaint, and in June, a first amended complaint, naming as defendants RTR, MERS, and Shauna Boedeker (and two other defendants), and asserting eight causes of action.

"On August 31, after the trial court sustained a demurrer to the first amended complaint, plaintiffs filed the operative second amended complaint (SAC)" (*De Guzman*, *supra*, A169700), now naming 12 defendants, including New Hope Charity (New Hope) and Julianmore, LLC (Julianmore), which complaint alleged nine causes of action.

As noted, in January 2024, New Hope and Julianmore filed a motion for summary judgment.[2] De Guzman filed opposition, and the motion came on for hearing on April 10 before the Honorable Nicole Healy, prior to which the trial court had issued a comprehensive tentative ruling granting the

---

[2]  The motion papers are not in the record on appeal.

3

motion.  On April 24, Judge Healy filed her order granting the motion, an order that attached and incorporated the tentative ruling.

On May 15, De Guzman filed a notice of appeal stating it was from a "[j]udgment after an order granting a summary judgment motion," which judgment was represented to have been "entered on . . . 4/24/2024."

## DISCUSSION

### Introduction

We begin by noting that, as in her earlier appeal, De Guzman has chosen to represent herself, as is her right.  Doing so, however, she is still held to the same standard as an attorney.  (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985.)  Self-representation is not a ground for lenient treatment, and "as is the case with attorneys, pro. per. litigants must follow correct rules of procedure" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247)—principles, we should note, pointed out to De Guzman in our opinion in the first appeal.

As noted, our opinion in the first appeal affirmed the summary judgment involved there.  Doing so, we included several pages criticizing De Guzman's briefing, and the numerous ways it violated the Rules of Court and settled principles of appellate review.  And after setting forth some of those rules and principles, we concluded as follows:  "De Guzman's 36-page opening brief does not comply with these requirements in many respects.  After an introduction, a lengthy section containing boilerplate law on summary judgment, a brief statement of facts, and a four-page section titled 'Issues Presented,' the brief sets forth seven arguments under separate headings, spanning some 13 pages. . . . Four of these seven arguments contain no citation to authority, and two others no citations to the record.  More importantly, the brief nowhere quotes from or acknowledges the trial court's

4

decision, nor does it make any effort to explain how that decision was in error. De Guzman nowhere identifies any of the elements of the nine purported causes of action in the operative complaint, nor does she explain how the alleged "triable issues" that she identifies relate to the trial court's conclusion that summary judgment was appropriate, or as to which of her causes of action. (*De Guzman*, *supra*, A169700.)

De Guzman's brief here has the same, if not more, violations of Rules of Court. Not only that, the record she has furnished is deficient in many respects, most fundamentally because it does not contain any judgment from which an appeal would be proper. That is, despite De Guzman's assertion in her notice of appeal that she is appealing from a "judgment," no such judgment is in the record. All there is is the order granting summary judgment, which is not appealable. (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 7 ["[A]n order granting summary judgment is not an appealable order. [Citations.] The appeal must be taken, instead, from a judgment entered on the basis of the summary judgment order."]; accord, Eisenberg, et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2024) ¶¶ 2:241, 2:241.1 (Eisenberg).)[3]

Also missing from the record are the moving papers filed by New Hope and Julianmore, which we note must be contained in the record on appeal. (See Cal. Rules of Court, rule 8.120(a)(1) ["the record on appeal in a civil case must contain . . . [¶] [a] record of written documents from the superior court proceedings"].) That, of course, would include the moving papers for the

---

[3] The appellate court, however, has discretion to entertain an appeal erroneously taken from an order granting summary judgment by construing it as an appeal from the judgment. (*Levy v. Skywalker Sound, supra,* 108 Cal.App.4th at p. 761; Eisenberg, *supra*, ¶¶ 2:242, 2:264.)

5

motion. They are not here. De Guzman, as the appellant, " 'has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [her].' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609; accord, *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296; Eisenberg, *supra*, ¶ 8:17.)

Turning to the briefing, De Guzman's opening brief has approximately three pages of "Statement of Facts" that does not contain one reference to the record. This violates California Rules of Court, rule 8.204(a)(1)(C), which provides that a brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number where the matter appears." And rule 8.204(a)(2)(C) provides that an appellant's opening brief shall "[p]rovide a summary of the significant facts . . . ." The leading California appellate practice guide instructs about this: "Before addressing the legal issues, your brief should accurately and fairly state the critical facts (including the evidence), free of bias; and likewise as to the applicable law. [Citations.] [¶] Misstatements, misrepresentations and/or material omissions of the relevant facts or law can instantly 'undo' an otherwise effective brief, waiving issues and arguments; it will certainly cast doubt on your credibility, may draw sanctions [citation], and may well cause you to lose the case." (Eisenberg, *supra*, ¶ 9:27, italics omitted.)

De Guzman's briefing does little more than rehash—and in conclusory terms—her apparent position below, which disregards the admonition from Division One of this court that she is not to merely reargue or "merely reassert [her] position [below]." (*Conderback, Inc. v. Standard Oil Co.* (1966) 239 Cal.App.2d 664, 687.)

Finally, and perhaps most significantly, De Guzman's brief ignores the most fundamental rule of appellate review, that the rulings of the trial court

6

are presumed correct, and that she, as appellant, must demonstrate the court committed reversible error. (*Jameson v. Desta, supra,* 5 Cal.5th at pp. 608–609; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) This, she has not done.

**The Appeal Has No Merit: De Guzman Has Demonstrated No Error**

As noted, we have the discretion to decide the appeal, and we choose to exercise that discretion, so as not to cause the trial court to expend its resources in the matter—not to mention cause New Hope and Julianmore to incur unnecessary expenses.

De Guzman's brief lists four arguments, the first of which is, as best we understand it, procedural, with the other three attacking the order granting the summary judgment. Those arguments are as follows:

(1) "The Trial Court Erred In Not Finding That The Consolidation Order The Case Is Still Valid And Outstanding and the title Issue On Appeal Pending , As Derived From This Consolidated Case"; (2) (erroneously also numbered (1)) "The Trial Court Erred In Not Finding Triable Issues That Defendant[s]/Respondents Were In Violation Of The New SB 1079 Foreclosure Law, As Amended"; (3) "The Trial Court Erred In Not Finding Triable Issues That Respondents As [*sic*] Not Bona Fide Purchase [*sic*] (BFP) For Value"; and (4) "The Trial Court Erred In Disregarding the Circumstantial Evidence That Can be Derived From The Evasive Response of Respondents, In Appellants [*sic*] Written Discovery, Necessary For Triable Issues." (Boldface omitted.)

As noted, De Guzman has not provided the moving papers below, so we do not know all the law nor all the facts that were put before the trial court. But what we do have is Judge Healy's analysis for her ruling, a ruling we described above as "comprehensive." And indeed it was, eight single-spaced

7

pages setting forth at length the reasons the motion had merit. We will not quote that ruling at length but we do describe, and occasionally quote from, that ruling, to demonstrate what an exemplary piece of trial court work it was—and why De Guzman's arguments have no merit.

De Guzman's first argument appears to be that the trial court "abused its discretion" in granting the motion because an earlier order consolidating an unlawful detainer action with the civil action somehow required the trial court to refrain from ruling on the motion. Not only does De Guzman fail to cite any case remotely supporting the argument, Judge Healy addressed it below, noting among other things that "[t]he Court later consolidated JulianMore's unlawful detainer case against plaintiff with this unlimited civil (wrongful foreclosure) action (see Sept. 15, 2023 Order), which has prevented the unlawful detainer action from going forward, thereby preventing JulianMore from evicting plaintiff's tenant, until plaintiff's claims against JulianMore in this case are resolved."

Turning to De Guzman's arguments attacking the substance of the motion, we begin with the general principles governing our review, that we review a "grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citations.]" (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) Put another way, we exercise our independent judgment, and decide whether undisputed facts have been established that negate plaintiff's claims. (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487.)

In addition to that is the well-recognized admonition set forth, for example, in *Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230 (*Claudio*): "On review of a summary judgment, the

8

appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.] . . . '[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed.' [Citation.]" (See Eisenberg, *supra*, ¶ 8:17.2 ["Although the trial court's decision [on appeal from summary judgment] is reviewed independently, the *scope* of review is limited to those issues that have been adequately raised and supported in appellant's brief."].)

Not only are De Guzman's substantive arguments not "adequately raised [or] supported in [her] brief," the arguments are devastated by the thorough—and we mean thorough—analysis by Judge Healy. After setting forth the law on summary judgment, the background, and the "[a]sserted [c]laims", she went on to discuss the law of bona fide purchasers, the issue, she noted, on which all of De Guzman's claims "hinge." And from there Judge Healy went on to conclude that where, as here, the facts are not disputed, "the Evidence Establishes that New Hope Was a Bona Fide Purchaser." And so was Julianmore.

Supporting those conclusions were paragraphs of analysis. The analysis for New Hope is illustrative:

"1. The Evidence Establishes that New Hope Was a Bona Fide Purchaser for Value

"The Court finds there is no triable issue on this point.

"First, the evidence establishes that New Hope paid value for the

9

property. The parties agree that New Hope was the highest bidder at the foreclosure sale, and paid $315,600 for the property. The foreclosure involved the subordinate (junior) lien (the HELOC Deed of Trust), not the senior lien. This means that New Hope acquired the property subject to the First Deed of Trust. (See *Najah v. Scottsdale Ins. Co.* (2014) 230 Cal.App.4th 125, 140 [party who purchases property at foreclosure sale on junior lien acquires title subject to all senior liens].) Plaintiff stated that she owed about $640,000 on the senior loan at the time of the foreclosure. Thus, in addition to paying the $315,600 bid price, New Hope took on that additional $640,000 in debt. Plaintiff claims the $315,600 sales price was far below the market value, which Plaintiffs contends was about $2 million. But plaintiff offers no evidence supporting the claimed $2 million value. And the fair market value, as discussed above, is not particularly relevant; the question is whether New Hope paid value for the property, which it did.

"Second, plaintiff offers no evidence that New Hope had actual notice of plaintiff's claims, or actual notice of any alleged irregularity in the foreclosure sale. (See Lan Phung decl. [stating that New Hope had no knowledge of plaintiff's claims or any other irregularity or alleged defect in the foreclosure sale; New Hope had no prior business affiliation or association with JulianMore; and that New Hope had not received any documents or information referencing plaintiff's claims or otherwise suggesting that the foreclosure was in any way improper].) Plaintiff offers no admissible evidence suggesting that New Hope had any such actual notice.

"Further, the evidence is insufficient to raise a triable issue as to whether New Hope had constructive notice of plaintiff's claims or of any alleged irregularity in the foreclosure sale." (Italics added.)

An equally compelling analysis followed as to Julianmore.

Following that, Judge Healy held, again with supporting analysis, that: "Plaintiff argues that the filing of her lawsuit should have provided constructive notice of her claims to any potential buyers even without a recorded lis pendens, but Plaintiff cites no authority for this argument. . . . The law provides a well-established and relatively simple way to put the public and any prospective buyers on constructive notice of the litigation and plaintiff's claims-namely, recording a lis pendens. Plaintiff admits she didn't do so. There is no evidence in the record raising a triable issue on the constructive notice question."

Finally, Judge Healy rejected all of De Guzman's opposition, with these fully supported conclusions: "Plaintiff Has Not Presented Admissible Evidence Showing that New Hope and JulianMore Were Not Bona Fide Purchasers"; "Plaintiff's Opposing Separate Statement Does Not Properly Dispute Defendants' Facts"; and "Plaintiffs' Arguments Regarding SB 1079 and Civil Code, Section 2924m Do Not Raise a Triable Issue."

## DISPOSITION

The judgment (order) is affirmed. New Hope Charity and Julianmore, LLC, shall recover their costs on appeal.

11

_____

              RICHMAN, ACTING P. J.

We concur.

_____

MILLER, J.

_____

DESAUTELS, J.

(A170487N)